**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Southwest Heritage Bank, | No. CV-25-00047-PHX-JZB |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Steven C Coury, et al., | |
| Defendants. | |

**TO THE HONORABLE STEPHEN M. MCNAMEE, UNITED STATES DISTRICT JUDGE**:

Pending before the Court are Plaintiff's "Motion for Entry of Default Judgment Against Defendants Lincoln J. Moore" (Motion for Default Judgment") (doc. 38) and "Motion for Award of Attorney Fees and Costs" ("Motion for Attorneys' Fees") (doc. 40). In its Motion for Default Judgment, Plaintiff seeks entry of default judgment against Defendant Lincoln J. Moore ("Defendant Moore") "for the net overdrawn funds of $683,430.42, full indemnification of the claim brought by 1st Bank for $422,682.86, . . . for pre-judgment interest accruing until the date of this judgement at the legal rate of 10% per annum, [and] for post-judgment interest accruing at the date of this judgement at the federal judgement rate per diem[.]" (Doc. 38 at 5.) In its Motion for Attorneys' Fees, Plaintiff "requests an award of attorney's fees in the amount of $8,771.10, recoverable costs in the amount of $1,371.38, and anticipated fees to take this matter to judgement in the amount of $2,500, for a total of $12,642.48." (Doc. 40 at 2.)

This Report and Recommendation is filed pursuant to General Order 21-25.[1] Because the *Eitel* factors weigh against entry of default judgment, the Court **recommends** Plaintiff's Motion for Default Judgment be **denied without prejudice**. Consequently, because there is no entry of judgment against Defendant Moore, the Court **recommends** Plaintiff's Motion for Attorneys' Fees be **denied without prejudice**. Considering Plaintiff's Complaint—with every claim sounding in fraud—does not satisfy Rule 9(b)'s heightened pleading standard, the Court **recommends** that Plaintiff be **granted 30 days to file an amended complaint**.

## I.    Factual Background.[2]

Plaintiff's action arose out of an alleged "check kiting scheme"[3] involving transactions by Defendant Moore from a Steve Coury Ford, LLC ("SCF") small business checking account number 4000059893 (the "Account"). (Doc. 1 at 3.) The allegations in the Complaint and Plaintiff's filings are summarized as follows.

On July 17, 2024, Defendant Moore was added as a signer on the Account. (*Id.*) Plaintiff alleges that, following his addition as a signer, activity on the Account "escalated

---

[1]    General Order 21-25 provides:

When a United States Magistrate Judge to whom a civil action has been assigned pursuant to Local Rule 3.7(a)(1) considers dismissal to be appropriate but lacks the jurisdiction to do so under 28 U.S.C. § 636(c)(1) due to incomplete status of election by the parties to consent or not consent to the full authority of the Magistrate Judge,

IT IS ORDERED that the Magistrate Judge will prepare a Report and Recommendation for the Chief United States District Judge or designee.

IT IS FURTHER ORDERED designating [Senior United States District Judge Stephen M. McNamee] to review and, if deemed suitable, to sign the order of dismissal . . . .

[2]    The factual background of this action largely mirror's that of *1st Bank Yuma v. Southwest Heritage Bank*, No. CV-25-00252-PHX-JZB. This is because both actions "share questions of fact and legal issues . . . . [namely,] the alleged check kiting scheme perpetrated by Defendant Moore between Plaintiffs First Bank and Southwest Heritage." (Doc. 32 at 6.)

[3]    "Check kiting is a scheme designed to separate the bank from its money by tricking it into inflating bank balances and honoring checks drawn against accounts with insufficient funds." *United States v. Frydenlund*, 990 F.2d 822, 824 (5th Cir. 1993) (cleaned up); *Williams v. United States*, 458 U.S. 279, 281 n.1 (1982) (noting that "[i]n effect, the check kiter" profits off the scheme by "tak[ing] advantage of the several-day period required for the transmittal, processing, and payment of checks from accounts in different banks").

- 2 -

dramatically, with approximately $114.9 million and over 1,000 checks cycled through the Account from May to October 2024.[4] (*Id.*) This cycling involved transferring funds between the Account and SCF accounts at Arizona Financial Credit Union and 1st Bank Yuma. (*Id.*)

Starting in October 2024, Plaintiff alleges that Defendant Moore requested multiple stop payments on checks deposited at other financial institutions shortly after depositing checks drawn on those financial institutions into the Account at Southwest Heritage Bank. (*Id.*) Plaintiff asserts that such activity resembles a check kiting scheme. (*Id.*)

"From October 16, 2024, onward, the Account maintained a significant negative balance, despite repeated promises by SCF to deposit funds." (*Id.*) By November 27, 2024, the Account's negative balance totaled –$703,845.42. *See* (*id.*); *see also* (doc. 52 at 7.) On the same day, Plaintiff allegedly sent letters to Defendants Coury, Moore, and SCF notifying them of the account's negative balance and requested payment. (Doc. 1 at 4.)

**II.    Procedural Background**.

Plaintiff initiated this action on January 1, 2025, when it filed its ten-page Complaint. (*Id.* at 4–8.) The Complaint is composed of seven counts—all of which apply to Defendant Moore. (*Id.*) Those counts are: (1) a bank fraud claim under 12 U.S.C. §§ 1833a, 1344; (2) a Racketeer Influenced and Corrupt Organizations ("RICO") claim under 18 U.S.C. §§ 1962, 1964(c); (3) an Arizona RICO claim under A.R.S. §§ 13-2314.04, 13-2312(A); (4) a conversion claim; (5) a fraud claim; (6) a negligent misrepresentation claim; and (7) an unjust enrichment claim. (*Id.*) All counts are either fraud claims or are grounded in fraud. *See* (*id.*) All seven counts are "[a]gainst [a]ll Defendants." (*Id.*) Plaintiff did not differentiate their allegations amongst the Defendants, nor identify the role each Defendant played beyond averring that Defendant Moore cycled checks through Southwest Heritage Bank, First Bank Yuma, and Arizona Financial Credit Union. *See* (*id.* at 3–8.)

Service was subsequently executed on Defendants SCF, Moore, Steven C. Coury,

---

[4]    Plaintiff provides an example of $1,708,624 in checks from notices and chargeback notices. *See* (doc. 52 at 10–59.) However, Plaintiff: (1) does not assert whether all of the checks related to the overdrawn balance; (2) filed these exhibits after *two* requests for supplemental briefing; and (3) did not attach any of these checks to its ten-page Complaint.

and Julie Ann Coury. *See* (docs. 6–9.) Service was returned unexecuted for Defendant Jane Doe Moore. *See* (doc. 10.)

Although four of the Defendants were served, they did not timely answer, resulting in Plaintiff filing an application for default. *See* (doc. 11.) On February 5, 2025, the Clerk of Court entered default against all Defendants. *See* (doc. 13.) On February 6, 2025, Defendants Steven C. Coury and SCF filed a late answer. *See* (docs. 14, 15.) On February 13, 2025, they filed a motion to set aside default. (Doc. 23.) Noting the dispositive nature of the motion, and the fact that not all parties had consented to the jurisdiction of the Magistrate Judge, this Court filed a Report and Recommendation to Senior United States District Judge Stephen M. McNamee recommending the motion be granted. (Doc. 30.) Judge McNamee adopted the Court's Report and Recommendation in full on July 10, 2025. (Doc. 31.)

On July 29, 2025, this Court granted a Stipulation to Consolidate in part, transferring this action's sister case, *1st Bank Yuma v. Southwest Heritage Bank*, No. CV-25-00252-PHX-JZB, to this Court. (Doc. 32 at 6.)

On October 6, 2025, Plaintiff filed both its Motion for Default Judgment and Motion for Attorneys' Fees. *See* (docs. 38, 40.) On October 21, 2025, this Court, finding that Plaintiff's Motion for Attorneys' Fees insufficient, requested additional briefing from Plaintiff to supplement its Motion. *See* (doc. 41.) On October 29, 2025, this Court, finding that Plaintiff's Motion for Default Judgment insufficient, requested additional briefing from Plaintiff to support its Motion. *See* (doc. 42.)

On November 3, 2025, this Court filed a Report and Recommendation to Senior United States District Judge Stephen M. McNamee recommending Plaintiff's and Defendants Steven C. Coury's and SCF's Stipulated Motion for Entry of Stipulated Judgment (doc. 35)—filed on August 25, 2025—be granted. *See* (doc. 44.) Senior United States District Judge Stephen M. McNamee adopted the Court's Report and Recommendation in full on November 17, 2025. (Doc. 47.)

Plaintiff filed its additional briefings October 29, 2025, and November 6, 2025,

respectively. (Docs. 43, 45.) On November 13, 2025, this Court, again finding the Motions and additional briefings insufficient, provided Plaintiff with a *second* opportunity to supplement its Motions for Default Judgment and for Attorneys' Fees. *See* (doc. 46.) On December 4, 2025, Plaintiff filed its supplements for both Motions. (Docs. 49–52.)

To date, Defendant Moore has not answered the Complaint. Finding no reason to further delay this action, nor any reason to request further supplemental briefings, the Court will accordingly address Plaintiff's Motions.

**III.    Motion for Default Judgment.**

The first matter the Court will address is whether entry of default judgment in the amount of $1,106,119.28 and pre- and post-judgment interest against Defendant Moore is warranted.

*A. Legal Standards.*

Rule 55 states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After entry of default, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Court's "starting point is the general rule that default judgments are ordinarily disfavored." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In considering default judgment against parties that have "failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). A default judgment entered by a district court devoid of personal or subject matter jurisdiction is void. *Id.* A court has personal jurisdiction over a party where that party has sufficient "minimum contacts" with the territory "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A court has federal-question subject matter jurisdiction where, "on the face of the plaintiff's properly pleaded complaint," the

civil action in question "aris[es] under the Constitution, laws, or treaties of the United States." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 392 n.6 (1987) (quoting 28 U.S.C. § 1331).

After personal and subject matter jurisdiction have been established, the court must consider whether default judgment is proper under the *Eitel* factors. *See Eitel*, 782 F.2d at 1471–72. The *Eitel* factors are:

> (1) the possibility of prejudice to the plaintiff[;] (2) the merits of plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.*

In applying the *Eitel* factors, the Court notes that, "for default judgment purposes[,] . . . '*well-pled* allegations in the complaint regarding liability are deemed true.'" *Ariz. Bd. of Regents v. Doe*, 555 F. Supp. 3d 805, 815 (D. Ariz. 2021) (emphasis added), *aff'd sub nom. Arizona Bd. of Regents for and on behalf of Arizona State U. v. Doe*, No. 21-16525, 2022 WL 1514649 (9th Cir. May 13, 2022) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002)). "However, necessary facts not contained in the pleadings, *and claims which are legally insufficient*, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (emphasis added); *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (quoting *Nishimatsu Constr. Co., Ltd. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Regarding damages sought in default judgment motions, they "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The movant bears the burden of establishing the damages requested because, as a "general rule," damages sought in the complaint are not taken as true upon entry default. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating

to the amount of damages, will be taken as true."). "It is well settled that a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

**B. Discussion**.

The Court will proceed as follows. First, the Court will analyze whether it has proper jurisdiction over this matter. Second, the Court will analyze whether default judgment is proper under the *Eitel* factors.

1. Jurisdiction.

For the following reasons, the Court finds that: (1) subject-matter jurisdiction is proper in this action; (2) it has personal jurisdiction over Defendant Moore; and (3) venue is proper.

a. *Subject-Matter Jurisdiction*.

In its Complaint, Plaintiff asserts that the Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because some of the claims arise under federal law. (Doc. 1 at 2.) Specifically, Plaintiff asserts that its claims under "18 U.S.C. § 1962 and 1964, and 12 U.S.C. §§ 1833a and 1344" convey federal question jurisdiction. (*Id.*) The Court agrees that 18 U.S.C. §§ 1962 and 1964 conveys federal question jurisdiction,[5] but not 12 U.S.C. §§ 1833a and 1344.[6] Because the Court has federal question jurisdiction, and Plaintiff's state law claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[,]" the Court has supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(a); *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025) (citation omitted).

---

[5]   *See infra* section III.B.2.b.ii. While discussed in greater detail below, the Court does not find that Plaintiff has averred a sufficient Civil RICO claim. However, the failure to successfully aver a federal claim does not defeat federal question jurisdiction. *See Bell v. Hood*, 327 U.S. 678, 682 (1946); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.") (citation omitted).
[6]   *See infra* section III.B.2.b.i.

　　　　b. *Personal Jurisdiction*.

The next issue is whether the Court has personal jurisdiction over Defendant Moore. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Arizona state law permits the exercise of personal jurisdiction over parties "to the extent permitted under the United States Constitution." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (citing Ariz. R. Civ. P. 4.2(a)). "Therefore, the determination whether the District Court had personal jurisdiction over Defendants is subject to the terms of the Due Process Clause of the Fourteenth Amendment." *Morrill*, 873 F.3d at 1141. The Due Process Clause requires that, for a Court to exercise personal jurisdiction over a defendant, that defendant must have sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (cleaned up).

There are two categories of personal jurisdiction, namely, general and specific. *Freestream Aircraft (Bermuda) Ltd. v. Aero Ltd. Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). While Plaintiff has not stated whether the Court has general or specific jurisdiction, seeing as Defendant Moore was served in Oklahoma, *see* (doc. 7), and there is a dearth of evidence establishing that he is a domiciliary of Arizona, the proper category is specific jurisdiction. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) ("Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise only 'specific' jurisdiction—that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim.").

"The inquiry whether a forum State may assert specific jurisdiction over . . . nonresident defendant[s] focuses on the relationship among the defendant[s], the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). "The 'primary concern' in assessing [specific] personal jurisdiction is 'the burden on the defendant[s].'" *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255 (2017) (quoting *World-*

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Specifically, the Court analyzes the following three factors to determine whether a defendant had sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Morrill*, 873 F.3d at 1142. The Plaintiff bears the burden of establishing the first two *Morrill* elements. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the Plaintiff satisfies the first two elements, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

In analyzing the first *Morrill* element, courts generally apply the *Dole* purposeful direction test where the claims arise from alleged tortious conduct. *Morrill*, 873 F.3d at 1142. The purposeful direction test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

Because the claims alleged against Defendant Moore arise from tortious acts—namely, alleged defrauding a federally insured institution, racketeering and other financial malfeasance—the Court will apply the *Dole* purposeful direction test as a supplement to the first *Morrill* factor when analyzing whether the Court has specific personal jurisdiction here.

Establishing specific personal jurisdiction over Defendant Moore is rather clear in this action. Turning to the first *Morrill* specific personal jurisdiction element, the Court finds that Defendant Moore had purposefully directed his acts towards Arizona—*i.e.*, the forum state. Under the first *Dole* factor, Defendant Moore allegedly committed fraudulent

transactions with an alleged intent to defraud a federal insured Arizona bank. Such allegations appear sufficient to establish the first *Dole* factor. Under the second *Dole* factor, the Court finds that such act was expressly aimed at the forum state considering that the acts were committed in Arizona against Southwest Heritage Bank and other Arizona financial institutions. Next, applying the third *Dole* factor, Plaintiff's pleadings and filings make it clear that its entire financial loss caused by Defendant was incurred in Arizona. Seeing as the three-part *Dole* test is satisfied, the first *Morrill* specific personal jurisdiction element is likewise satisfied.

The second *Morrill* element is satisfied just as easily as the first. Defendant Moore's alleged activity of cycling checks through the Account and thereafter requesting stop payments directly led to this action. (Doc. 1 at 3.)  In short, but for Defendant Moore's acts, this action would not have arisen.

Because the first two *Morrill* elements are satisfied, the burden of proof for rebutting reasonableness falls upon Defendant Moore, which—considering his failure to litigate— he has failed to do. But, regardless of his failure to litigate, the Court concludes that the exercise of specific personal jurisdiction does comport with fair play and substantial justice for the foregoing reasons.[7] Therefore, the Court finds personal jurisdiction as to Defendant Moore proper in this case.

### c. Venue.

Venue is proper in the present case. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." quoting 28 U.S.C. § 1391(b)(1). "Additionally, "[v]enue is proper in any district 'in which a substantial part of the events or omissions giving rise to the claim occurred.'" *Noodles Dev., LP v. Hui*, No. CV-12-01165-PHX-ROS, 2013 WL 12111103, at *6 (D. Ariz. July 22, 2013) (quoting 28 U.S.C. § 1391(b)(2)). Because a substantial part of the events in this action occurred in Arizona, venue is satisfied.

---

[7]    As a final note, the Court finds that service was proper here. (Doc. 7.) Accordingly, proper service is not a bar to personal jurisdiction here. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Defendants must be served in accordance with Rule 4(d) . . . , or [else] there is no personal jurisdiction.").

2. <u>Default Judgment</u>.

Plaintiff seeks entry of default judgment against Defendant Moore. While Plaintiff's Motion fails to consider the seven *Eitel* factors, the Court will accordingly analyze whether default judgment is proper pursuant to the *Eitel* factors.

        *a. The Possibility of Prejudice to the Plaintiff*.

The first factor favors granting Plaintiff's motion for default judgment because Plaintiff will be prejudiced if default judgment is not entered. Defendant Moore "has failed to appear, and there is no basis to believe this is due to excusable neglect." (Doc. 38 at 4.) "If Plaintiff's motion for default judgment is not granted, Plaintiff 'will likely be without other recourse for recovery.'" *United States v. $86,496.00 in U.S. Currency*, 2008 WL 2687141, at *2 (D. Ariz. 2008) (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

        *b. The Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint*.

The second and third *Eitel* factors "are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Ent. USA Inc. v. Baldinsky*, No. CV-22-00970-PHX-DWL, 2023 WL 8185673, at *3 (D. Ariz. Nov. 27, 2023) (citation omitted). Where Plaintiff's Complaint states a claim upon which they may recover, the second and third factors "weigh in favor of default judgment." *Joe Hand Promotions Inc. v. Alvarez*, No. CV-23-01924-PHX-DJH, 2025 WL 1707915, at *2 (D. Ariz. June 18, 2025) (citing *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010)).

Plaintiff asserts the following seven counts against Defendant Moore: (i) bank fraud under 12 U.S.C. §§ 1833a and 1344; (ii) civil Racketeer Influenced and Corrupt Organizations ("RICO") claim under 18 U.S.C. §§ 1962 and 1964(c); (iii) Arizona state law RICO under A.R.S. §§ 13-2314.04 and 13-2312(A); (iv) conversion; (v) fraud; (vi) negligent misrepresentation; and (vii) unjust enrichment. *See* (doc. 1 at 4–8.) The Court will address each claim in turn.

i.    *Bank Fraud*.

The Court finds that Plaintiff's bank fraud claim is legally deficient because 12 U.S.C. § 1833a, part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), does not create a private right of action. 12 U.S.C. § 1833a(e) ("A civil action to recover a civil penalty under this section shall be commenced by the Attorney General."). As several sister courts have held, "FIRREA does not create a private cause of action." *Conry v. Barker*, No. 14-cv-02672-CMA-KLM, 2015 WL 5636405, at *4 n.18 (D. Colo. Aug. 11, 2015), *report and recommendation adopted*, No. 14-cv-02672-CMA-KLM, 2015 WL 5608133 (D. Colo. Sept. 24, 2015); *U.S. ex rel. Houpt v. Wells Fargo Bank, N.A.*, No. 4:17-CV-00377-CWD, 2019 WL 591441 (D. Idaho Feb. 13, 2019) (noting that a non-government plaintiff "may not pursue civil penalties under FIRREA"), *aff'd sub nom. Houpt v. Wells Fargo Bank, N.A.*, 800 Fed. App'x 533 (9th Cir. 2020); *Ford v. Suntrust Mortg.*, 282 F. Supp. 3d 227, 233 (D.D.C. 2017) ("[A]ny action under 12 U.S.C. § 1833a must be brought by the government."); *Knight v. CitiFinancial, Inc.*, No. CV 24-1938-BAH, 2024 WL 5186699, at *2 (D. Md. Dec. 20, 2024) ("While § 1833a concerns civil penalties under FIRREA, it does not create a private right of action."), *aff'd*, No. 25-1046, 2025 WL 2170735 (4th Cir. July 31, 2025); *Lundstedt v. Deutsche Bank Nat'l Tr. Co.*, No. 3:13-CV-001423 (JAM), 2016 WL 3101999, at *5 (D. Conn. June 2, 2016) ("These provisions do not explicitly permit [a non-government] plaintiff to bring his claims under FIRREA.").

Although Plaintiff is a federally insured financial institution, *it is not the government*. Therefore, Plaintiff has no right of action under 12 U.S.C. § 1833a.

ii.    *Federal Civil RICO*.

For the following reasons, the Court finds that Plaintiff's Federal Civil RICO claim is insufficient under Rule 9(b)'s heightened pleading standard.

"RICO is primarily a criminal statute aimed specifically at curtailing the infiltration of business enterprises by organized crime." *Harper v. New Japan Secs. Int'l, Inc.*, 545 F. Supp. 1002, 1004 (C.D. Cal. 1982). While the RICO act is primarily a criminal statute in

nature, it does provide "a private right of action for treble damages to anyone injured 'by reason of' a violation of the Act." *Id.* (quoting 18 U.S.C. § 1964(c)); *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 945 F. Supp. 1355, 1383 (D. Or. 1996) ("Private litigants have standing under RICO only to the extent that they have been injured in their business or property by the conduct constituting the RICO violation.").

RICO's private right of action provision, § 1964(c), states that:

> *Any person injured* in his business or property by reason of a violation of section 1962 of this chapter *may sue* therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

18 U.S.C. § 1964(c) (emphasis added).

In this action, the operative § 1962 provision appears to be sub-section (c), which states that:

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

A violation of § 1962(c) requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). The Ninth Circuit has added a fifth factor to this list, namely, the conduct must be the probable cause of a party's injury. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

"To show the existence of an enterprise under the second element, plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and

(C) longevity necessary to accomplish the purpose." *Id.* (citing Boyle v. United States, 556 U.S. 938, 946 (2009)). The third requirement, a pattern, requires—at a minimum—"two acts of racketeering activity" conducted within 10 years of one another. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989) (quoting 18 U.S.C. § 1961(5)). The fourth element requires the defendant to have committed "any act indictable under several provisions of Title 18 of the United States Code," such as bank fraud. *See Rothman v. Vedder Park Mgmt.*, 912 F.2d 315, 316 (9th Cir. 1990); *see also* 18 U.S.C. § 1961(1) (noting that racketeering activity includes "financial institution fraud" under 18 U.S.C. § 1344). While the acts of racketeering under § 1961 are criminally indictable, the defendant need-not be convicted for a plaintiff to assert a Civil RICO claim against them. *See Sedima, S.P.R.L.*, 473 U.S. at 490.

Underpinning the five § 1962(c) elements is Fed. R. Civ. P. 9, which requires that "[i]n alleging fraud or mistake, a party must state with *particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, at 1065–66 (9th Cir. 2004) (noting that Rule 9(b) "applies to civil RICO fraud claims") (emphasis added). This requires a plaintiff to state *both* the predicate act and act at issue with particularity in their complaint. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) ("The allegations of predicate acts in the complaint concerning those elements of RICO are entirely general; no specifics of time, place, or nature of the alleged communications are pleaded. This is a fatal defect under Fed. R. Civ. P. 9(b), which requires that circumstances constituting fraud be stated with particularity.") (emphasis added); *see also Nutrition Distrib. LLC v. Custom Nutraceuticals LLC*, 194 F. Supp. 3d 952, 957 (D. Ariz. 2016) ("The plaintiff must adequately plead the elements of each predicate act, satisfying the pleading standard that would apply if the predicate act were a stand-alone claim.").

To state a sufficient Civil RICO claim under Rule 9(b), the Plaintiff cannot just "lump multiple defendants together[.]" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Rather, the Plaintiff must "differentiate their allegations when suing more than one

- 14 -

defendant[,]" identifying the role of each defendant in the alleged fraudulent scheme. *Id.* at 765–66.

Plaintiff patently fails to comport its Complaint with Rule 9(b). Regarding the pattern of racketeering activity which Defendant Moore allegedly committed, Plaintiff does not plead any exact time or place in which an act occurred. Instead, Plaintiff asserts that "[b]eginning in October 2024, Moore engaged in suspicious activity, including requesting multiple stop payments on checks deposited at other institutions shortly after depositing checks drawn on those institutions into the Account." (Doc. 1 at 3.) Plaintiff does not assert what checks lead to the negative $703,845.42 balance in the Account, does not differentiate their claims as to each Defendant, nor provide *specific* dates that Defendant Moore allegedly requested stop payments. In fact, Plaintiff does not attach a single exhibit to its ten-page—albeit only eight pages contain operative information—Complaint substantiating its allegations.

Such a failure to plead with any specificity has been fatal in other cases in this circuit. For example, in *Dhaliwal v. Singh*, the District Court for the Eastern District of California dismissed a plaintiff's RICO claims for failure to plead the elements of § 1962(c) with specificity. *See Dhaliwal v. Singh*, No. CV F 13-0484 LJO SKO, 2013 WL 2664336, at *16–20, *22 (E.D. Cal. June 12, 2013). Additionally, in *Skane v. Wells Fargo Home Mortgage, Inc.*, The District Court for the Southern District of California dismissed a RICO claim because it failed to plead either the predicate act or the act in question with specificity. *See Skane v. Wells Fargo Home Mortgage, Inc.*, No. 06-CV-1174 - IEG, 2007 WL 9776707, at *9 (S.D. Cal. Apr. 11, 2007).

In the case at hand, Plaintiff's failure to comport its Complaint with Rule 9(b) is fatal to its Motion for Default Judgment. *See Alan Neuman Prods., Inc.*, 862 F.2d at 1393 ("We believe that pleading requirements should be enforced strictly when default judgments are sought under RICO."). Compounding this error is the rule that "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps*, 980 F.2d at 1267. Consequently, Plaintiff's federal Civil

- 15 -

RICO claim does not state a claim upon which relief may be granted, and can only be redeemed via an amended complaint.

### iii.   *Arizona Civil RICO*.

Just as the heightened pleading standard inhibited Plaintiff's federal RICO claim, so too does it inhibit its Arizona RICO claim.[8] *See Steinberger v. McVey ex rel. Cnty. of Maricopa*, 318 P.3d 419, 435 (Ariz. App. 2014) ("Claims based on fraud must be pled with particularity.") (citing Ariz. R. Civ. P. 9(b)[9]). Because Plaintiff's Arizona RICO claim is predicated on fraud—e.g., that "Defendants conducted or participated, directly or indirectly, the affairs of an enterprises by asserting *false and fraudulent claims* in their check kiting scheme, (doc. 1 at 5)—Plaintiff's claim must have been pled with particularity. This, Plaintiff did not do.

### iv.   *Conversion*.

Plaintiff has not stated a sufficient claim for conversion under Arizona law. Conversion is defined as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."[10] *Universal Mktg. & Ent., Inc. v. Bank One of Ariz., N.A.*, 53 P.3d 191, 193 (Ariz. App. 2002). Because Plaintiff's conversion claim is grounded in alleged fraudulent acts by the Defendants, Plaintiff must satisfy Rule 9(b)'s heightened pleading standard. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) ("In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. . . . In that event, the claim is said to be 'grounded in fraud'

---

[8]   In short, "[w]hat's done cannot be undone." WILLIAM SHAKESPEARE, MACBETH act 5, sc. 1, l. 71.

[9]   Ariz. R. Civ. P. 9(b) and Fed. R. Civ. P. 9(b) are mirror images of one another.

[10]   To state a conversion claim, a plaintiff must show that they "had the right to immediate possession of the personal property at the time of the alleged conversion." *Mountains of Spices LLC v. Lafrenz*, 653 F. Supp. 3d 665, 677 (D. Ariz. 2023) (citation omitted), *vacated in part*, No. CV-21-01497-PHX-JAT, 2023 WL 3230989 (D. Ariz. May 3, 2023), *on reconsideration*, No. CV-21-01497-PHX-JAT, 2023 WL 3819293 (D. Ariz. June 5, 2023). "Additionally, where the property allegedly converted is money, a plaintiff must allege facts showing both that the money can be described, identified, or segregated, and an obligation to treat it in a specific manner." *Id.* (citation omitted).

or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).") (citation omitted). Because Plaintiff failed to plead Defendant Moore's alleged fraudulent acts with specificity, the Court finds that Plaintiff has failed to state a sufficient conversion claim pursuant to Rule 9(b).

> v.  _Fraud_.

Because Plaintiff has not met Rule 9(b)'s heightened pleading standard,[11] it has not stated a sufficient claim for fraud[12] upon which relief may be granted. *See Gould v. M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985, 988 (D. Ariz. 2012) (noting that, when asserting a fraud claim, a party must comply with rule 9(b)). Particularly, Plaintiff's failure to provide any specific details on the exact dates on which the Defendant Moore placed stop payments on the checks in question or provide any specific details about the checks leading up to the negative $703,845.42 balance is fatal to its claim. *See, e.g.*, *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531 (9th Cir. 1989) ("A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, *mere conclusory allegations of fraud are insufficient*.") (cleaned up and emphasis added). In essence, Plaintiff's general facts and conclusory statements, without any particularity as to the specific checks in question, is insufficient under Rule 9. Consequently, Plaintiff has not stated a fraud claim upon which relief may be granted.

//

//

---

[11]    *See supra* section III.B.2.b.ii.

[12]    Plaintiff has not specifically noted what flavor of fraud it is asserting—*i.e.*, fraud in the inducement, common law fraud, *etc*. Regardless, fraud claims under Arizona law generally require a party to establish the following nine elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the listener's reliance on its truth; (8) the right to rely on it; and (9) his consequent and proximate injury.

*See Meritage Homes Corp. v. Hancock*, 522 F. Supp. 2d 1203, 1218 (D. Ariz. 2007).

       *vi.*    *Negligent Misrepresentation*.

Plaintiff has not stated a sufficient claim for negligent misrepresentation. "Under Arizona law, a claim for negligent misrepresentation[13] must meet the particularity requirements of Rule 9(b)." *In re Ariz. Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1032 (D. Ariz. 2017) (cleaned up). Because Plaintiff has not met Rule 9(b)'s heightened pleading standard by pleading, with specificity, facts about the alleged misrepresentation,[14] its negligent misrepresentation claim is insufficient.

       *vii.*    *Unjust Enrichment*.

Because Plaintiff has not met Rule 9(b)'s heightened pleading standard, its alternative unjust enrichment claim is insufficient. "Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another."[15] *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 832 (D. Ariz. 2016). Because Plaintiff's claim is grounded in fraud—*e.g.*, "the result of the check kiting *fraud* is nothing short of an unjust enrichment[,]" (doc. 1 at 7) (emphasis added)—it must meet Rule 9(b)'s

---

[13]     The elements of negligent misrepresentation under Arizona law are:

    (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage.

*In re Ariz. Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1032 (D. Ariz. 2017) (citation omitted).

[14]     *See supra* sections III.B.2.b.ii, v.

[15]     To prevail on an Arizona state law unjust enrichment claim, "a plaintiff must allege: '(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment; and (5) an absence of a remedy provided by law.'" *SPUS8 Dakota LP v. KNR Contractors LLC*, 641 F. Supp. 3d 682, 699 (D. Ariz. 2022) (quoting *Perez v. First Am. Title Ins. Co.*, 810 F. Supp. 2d 986, 991 (D. Ariz. 2011)). "A claim for unjust enrichment may exist where a person confers a benefit to his detriment on another and allowing the other to retain that benefit would be unjust." *SPUS8 Dakota LP*, 641 F. Supp. 3d at 699 (citation omitted).

    Unjust enrichment claims are commonly plead in the alternative, because recovery under unjust enrichment is barred where recovery is had under another theory of liability. *See Isofoton, S.A. v. Giremberk*, No. CV-04-0798-PHX-ROS, 2006 WL 1516026, at *3 (D. Ariz. May 30, 2006). "[T]here are no requirements to include the magic words 'in the alternative' in making alternative claims." *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1029 (D. Ariz. 2003).

heightened pleading standard. *See Vess*, 317 F.3d at 1103–04; *see e.g.*, *Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017) ("Because the unjust enrichment claim is based on fraud, it too is subject to Rule 9(b)."). This, Plaintiff does not do.

   c. *Remaining Four Eitel Factors*.

  In light of Plaintiff's failure to state a claim for failure to meet Rule 9(b)'s heightened pleading standard, it is unnecessary to address the remaining four *Eitel* factors in depth. Turning to the fourth Eitel factor, the Court finds that Plaintiff has not substantiated its claimed damages, militating against entry of default judgment. *See 1st Bank Yuma v. Sw. Heritage Bank*, No. CV-25-00252-PHX-JZB, 2026 WL 248335, at *1 (D. Ariz. Jan. 30, 2026) ("In a default judgment, the Court will not award damages based solely on the complaint; a plaintiff bears the burden of substantiating their claimed damages. . . . The Court may award damages without an evidentiary hearing when 'the amount claimed is a liquidated sum or is capable of mathematical calculation.'") (quoting *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981)). Regarding the fifth and sixth *Eitel* factors, the Court finds that they weigh in favor of default because: (1) the Court does not foresee a dispute concerning material facts; and (3) the Court does not find that default was due to excusable neglect. The seventh factor, policy favoring decisions on the merits, weighs against granting default judgment.

  Even though the Court finds that the first, fifth, and sixth factors favor entry of default judgment, these factors are insufficient to overcome the deficiencies contained within Plaintiff's Complaint. Accordingly, the Court **recommends** Plaintiff's Motion for Default Judgment be denied without prejudice.

**IV.** **Motion for Attorneys' Fees**.

  Next, the Court addresses Plaintiff's Motion for Attorneys' fees. Because the Court recommends Plaintiff's Motion for Default Judgment be dismissed without prejudice, there has not been an entry of judgment. Consequently, Plaintiff's Motion for Attorneys' fees is unwarranted under Rule 54. See Fed. R. Civ. P. 54(d)(2)(B)(i) ("Unless a statute or a court order provides otherwise, the motion [for attorneys' fees] must . . . be filed no later than 14

days after the *entry of judgment*.") (emphasis added) Therefore, the Court **recommends** Plaintiff's Motion for Attorneys' fees be denied without prejudice of refiling.

Although the Court recommends Plaintiff's Motion for Attorneys' Fees be denied without prejudice, it shall provide Plaintiff—in an attempt to avoid requiring future supplemental briefings on attorneys' fees—with the legal standards for addressing reasonableness of requested fees in *federal court*.

## LEGAL STANDARDS

Pursuant to Rule 54, a party may move for attorneys' fees and related non-taxable expenses via motion that: (a) is filed within "14 days after the entry of judgment"; (b) specifies the "grounds entitling the movant to the award"; (c) "state[s] the amount sought"; and (d) "disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made." Fed. R. Civ. P. 54(d)(2)(B); *see also* LRCiv. 54.2.

Plaintiff only asserts one ground entitling it to attorneys' fees: 18 U.S.C. § 1964(c). *See* (doc. 45 at 4); *see also* (doc. 49 at 4.) Section 1964(c) states that:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, *including a reasonable attorney's fee*, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

18 U.S.C. § 1964(c) (emphasis added).

Plaintiff asserts that the determination of reasonableness is governed by Arizona state law. *See* (doc. 45 at 4); *see also* (doc. 49 at 4.) Such statement is inapposite, as this district and her sister districts have held *time and time again* that the Lodestar method is used to calculate reasonableness under Section 1964(c). *See Zwicky v. Diamond Resorts Inc.*, No. CV-20-02322-PHX-DJH, 2024 WL 1717553, at \*5 (D. Ariz. Apr. 22, 2024) (applying the Lodestar method) (emphasis added); *see also Sys. Mgmt., Inc. v. Loiselle*,

154 F. Supp. 2d 195, 208–11 (D. Mass. 2001) (same); *Meier v. UHS of Del., Inc.*, No. 4:18-CV-615, 2023 WL 7164909 (E.D. Tex. Oct. 31, 2023) (same).

The Lodestar method is a two-step process whereby the court first "multiplies the number of hours reasonably expended on a case by a reasonable hourly rate." *Roberts v. City of Honolulu*, 938 F.3d 1020,1023 (9th Cir. 2019) (cleaned up). "Second, the court determines whether to modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016).

The reasonable hourly rate is assessed by "the prevailing market rate in the relevant community." *Id.* To obtain an award of attorneys' fees and costs, the prevailing party must file a motion for fees and submit evidence in support of the proposed award. *Machowski v. 333 N. Placentia Prop.*, LLC, 38 F.4th 837, 841 (9th Cir. 2022). In determining the reasonably hourly rate, the Court is not guided by the hours charged by the prevailing party's attorney, but is rather "guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

The number of hours considered in the Lodestar calculus is not limited to those hours expended up to a favorable judgment. Rather, "[i]n statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659–60 (9th Cir. 1985). This includes FLSA actions. *See Gary v. Carbon Cycle Ariz. LLC*, 398 F. Supp. 3d 468, 479 (D. Ariz. 2019) ("Indeed, courts within the Ninth Circuit have awarded attorneys' fees to prevailing plaintiffs in FLSA actions for the costs incurred in preparing their motions for attorneys' fees.").

"[I]n appropriate cases, the district court may judge the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.* . . . that

have not been subsumed in the lodestar calculation." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).[16]

**V.     Conclusion**.

For the foregoing reasons, the Court **recommends** that Plaintiff's Motion for Default Judgment and Motion for Attorneys' Fees be denied without prejudice. While the Court finds that Plaintiff's Complaint insufficiently pleads claims sounding in fraud, this is not the end of this matter. Instead, because the defects contained within Plaintiff's Complaint may be remedy upon amendment, the Court **recommends** that Plaintiff be granted 30 days to file an amended complaint. Permitting leave to amend in this situation appears apt in light of our sister courts' decisions. *See Chilko v. Lorren*, No. 1:07CV1316 OWW GSA, 2008 WL 3154734, at *5–6 (E.D. Cal. Aug. 3, 2008) (denying motion for default judgment while permitting leave to amend); *see also 5960 Bonsall, LLC v. Lanix Expl. Inc.*, No. CV 15-03628-MMM (PJWx), 2015 WL 12696201, at *10 (C.D. Cal. Oct. 15, 2015) (denying motion for default judgment while permitting plaintiff to file a motion for leave to amend). Plaintiff is warned that the Court will neither read in facts omitted from an amended complaint nor bowdlerize claims or content that should not be contained therein.

As a final matter, the Court suggests that Plaintiff ponder whether—in its amended

---

[16]     Local Rule 54.2(c) adds an additional factor to the list, namely, "Any other matters deemed appropriate under the circumstances." LRCiv. 54.2(c)(3)(M).

complaint or otherwise—Defendant Jane Doe Moore is factually and legally a proper defendant in this action. First, the Court notes that in Plaintiff's notice of execution of service upon Defendant Jane Doe Moore, Plaintiff's process server, in all caps, notes that "DEFENDANT[, presumably Jane Doe Moore,] IS NOT MARRIED." (Doc. 10.) Consequently, it is unclear whether there is community property in this matter. If not, it is unnecessary to name Defendant Jane Doe Moore as a defendant because there is no community property at stake.

Second, were Defendants Moore and Jane Doe Moore married, the Court is concerned that it is devoid of specific personal jurisdiction over Defendant Jane Doe Moore. The District of Arizona's precedent establishes that where an individual's spouse commits some tort or breaches some contract that benefits the martial community, the inquiry is not whether the marital community itself has sufficient contacts with the forum; Rather, "the appropriate inquiry is whether the spouse herself has contact with Arizona sufficient to confer specific jurisdiction." *See Sw. Foodservice Excellence Inc. v. Strub*, No. CV-19-05063-PHX-SRB, 2020 WL 6323823, at *3 (D. Ariz. May 4, 2020); *see also Maguire v. Coltrell*, No. CV-14-01255- PHX-DGC, 2015 WL 1966471, at *3–4 (D. Ariz. Apr. 30, 2015) (finding that the spouse's sharing of marital property is insufficient to confer specific personal jurisdiction due, in part, to the fact that the matrimonial domicile being in non-community property state). In this case, it is unclear whether the Moore Defendants' matrimonial domicile, if they were ever married, was Arizona. Specifically, the Court notes that the notices of execution of service regarding both Moore Defendants state that service was executed in Oklahoma, not Arizona. *See* (docs. 7, 10.)

The reason the Court focuses on the matrimonial domicile is that "the property rights of a husband and wife are governed by the law of the couple's matrimonial domicile at the time of the acquisition of the property." *Sigmund v. Rea*, 248 P.3d 703, 706 (Ariz. App. 2011) (quoting *Lorenz-Auxier Fin. Grp., Inc. v. Bidewell*, 772 P.2d 41, 43 (Ariz. App. 1989)). Now, were Oklahoma a community property state like Arizona, this matter would be clear cut, because Arizona state law, "Arizona courts may exercise personal jurisdiction

over both [spouses] even when one lacks minimum contacts with Arizona." *Sigmund*, 248 P.3d at 705. However, Oklahoma is neither a community property state in the traditional sense nor does it allow the unilateral acts of one spouse to create a community obligation. *See* Okla. Stat. Ann. tit. 43, § 207 ("A husband and wife may hold property as joint tenants, tenants in common, or as community property."); *see also* Okla. Stat. Ann. tit. 43, § 208 ("Neither husband nor wife, as such, is answerable for the acts of the other."); *Owens v. Owens*, 529 P.3d 905, 916 (Okla. 2023), *as corrected* (Mar. 8, 2023), *as corrected* (May 1, 2023) (noting that there is a *presumption* that property acquired during the marriage is marital property) (emphasis added).

While the Court *will not* require briefing at this time on whether Defendant Jane Doe Moore is a proper Defendant and if this Court has personal jurisdiction over her, the Court suggests Plaintiff consider the following two points if it intends to file an amended complaint.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Entry of Default Judgment Against Defendants Lincoln J. Moore (doc. 38) be **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Award of Attorney Fees and Costs (doc. 40) be **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, if the following recommendations are adopted, Plaintiff be granted **THIRTY (30) DAYS** to file an amended complaint that complies with Fed. R. Civ. P. 9(b). In drafting an amended complaint, Plaintiff should take heed of this Court's admonitions and suggestions. Failure to cure the deficiencies noted in this Report and Recommendation may lead to Plaintiff's case being dismissed as to the Defendants then remaining.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and

Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 2nd day of February, 2026.

Honorable John Z. Boyle
United States Magistrate Judge